IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**KIMBERLY KAY TISDALE,** ]
]
    **Plaintiff,** ]
]
v. ]     5:18-cv-01230-ACA
]
**COMMISSIONER, UNITED STATES** ]
**SOCIAL SECURITY** ]
**ADMINISTRATION,** ]
]
    **Defendant.** ]

## **MEMORANDUM OPINION**

Plaintiff Kimberly Kay Tisdale appeals the decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## **I. PROCEDURAL HISTORY**

On August 14, 2014, Ms. Tisdale applied for supplemental security income benefits, alleging that her disability began on April 1, 2004. (R. 118–23). The Commissioner initially denied her application and she requested review by an Administrative Law Judge ("ALJ"). (*Id.* at 60–64, 71–73). After holding a hearing (*id.* at 25–45), the ALJ issued an unfavorable decision (*id.* at 10–19), which Ms. Tisdale requested that the Appeals Council review (*id.* at 116). On June

11, 2018, the Appeals Council denied her request for review. (R. at 1–5). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. § 1383(c)(3).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry*, 802 F.3d at 1267 (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Tisdale had not engaged in substantial gainful activity since August 14, 2014, the date of her application. (R. at 12). He found that Ms. Tisdale had the severe impairments of borderline intellectual functioning and asthma, but that her gastroesophageal reflux disease and chronic sinusitis were non-severe. (*Id.*).

The ALJ concluded that Ms. Tisdale did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 12–14). The ALJ specifically found that Ms. Tisdale did not meet Listing 12.05(B), which requires that an applicant have either an extreme limitation of one, or a marked limitation of two of the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 13–14); 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(B)(2). The ALJ explained that although Ms. Tisdale had moderate limitations in all four categories, she did not have an extreme or a marked limitation in any of them. (R. at 14).

> After considering the evidence, the ALJ determined that Ms. Tisdale had
>
> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to simple and routine work with few and simple workplace decisions or changes. She can tolerate occasional interaction with coworkers and supervisors with no consequential interaction with the public. The claimant should not be exposed to environmental hazards or pulmonary irritants. She should work in a climate-controlled environment to avoid temperature and humidity extremes.

(R. at 15). Although the ALJ found that Ms. Tisdale had borderline intellectual functioning, he concluded that her subjective complaints of mental limitations were "less than fully supported." (*Id.* at 16, 18). He gave little weight to an examination and opinion given by Ms. Tisdale's consultative psychologist, Erin

Smith, who reported that Ms. Tisdale had "Extremely Low" cognition, with an IQ of 53 and "severely impaired" social and adaptive functioning, ability to maintain gainful fulltime employment, and ability to manage funds. (*Id.* at 17). The ALJ concluded that Dr. Smith's "findings and opinion are out of proportion to the other medical evidence of record, the observations of Social Security employees, and the claimant's own reports, as well as the reports of the claimant's mother." (*Id.*; *see also id.* at 17–18).

Based on his finding about Ms. Tisdale's residual functional capacity, and with the assistance of testimony from a vocational expert, the ALJ found that Ms. Tisdale would be able to perform jobs such as assembler, product marker, and packager, all of which exist in significant numbers in the national economy. (R. at 18–19). Accordingly, the ALJ determined that Ms. Tisdale had not been under a disability as defined in the Social Security Act since she filed her application. (*Id.* at 19).

## IV. DISCUSSION

Ms. Tisdale asserts that (1) the ALJ erred by finding that she was not disabled under Listing 12.05(B); (2) substantial evidence does not support the ALJ's determination that Ms. Tisdale's mental impairments would not limit her to sheltered work activity; and (3) the ALJ erred by finding that jobs exist in the national economy that she can perform, because he failed to properly resolve

conflicts between the vocational expert's testimony, the Dictionary of Occupational Titles, and the United States Department of Labor's O*Net job descriptions. (Doc. 10 at 8). Although she lists these as three separate arguments, the first two issues require the court to determine whether the ALJ erred in affording little weight to Dr. Smith's opinion. Accordingly, the court will address that question first, followed by the three arguments proffered by Ms. Tisdale.

1. Dr. Smith's Opinion

Dr. Smith, a clinical psychologist, examined Ms. Tisdale once in 2014, at the request of the Commissioner. (*See* R. at 329). Dr. Smith interviewed Ms. Tisdale and conducted a Wechsler Adult Intelligence Scale–4th Edition test, resulting in scores of "Extremely Low on overall measures of Verbal Comprehension, Perceptual Reasoning, Working Memory, and Processing Speed. Her Full Scale IQ score of 53 places her in the Extremely Low range of intellectual functioning." (R. at 331). Dr. Smith also reported:

> Cognition appears to be in the Extremely Low range. [Ms. Tisdale] struggled to provide age appropriate similarities and gave no interpretations to proverbs. She was able to register 3 objects immediately, and could recall 1 of the objects at 5 minutes delay. Her attention and concentration were poor. She was able to repeat 3 digits forward, 2 digits backward, and 3 digits in sequence. She was able to perform very simple mental arithmetic calculations which requires only addition or subtraction of 2 numbers, she was not able to multiply or divide. She was unable to perform serial-3 subtraction. The pace of her response to questions was normal. Her recent and remote memory appeared to be intact. Her responses during this assessment appeared to be genuine and she did not appear to be

> exaggerating her difficulties. A valid and complete examination was obtained.

(R. at 331).

The ALJ afforded Dr. Smith's opinion little weight, finding that "[h]er findings and opinion are out of proportion to the other medical evidence of record." (R. at 16–17). In support, the ALJ pointed to Ms. Tisdale's treating medical sources, none of which had observed abnormalities "upon mental status examination"; the observation of the Social Security employee who conducted Ms. Tisdale's teleclaim interview and who observed that she had no problem answering or understanding the questions; the report of Ms. Tisdale and her mother that she follows written and spoken instructions well; and Ms. Tisdale's education records, which show higher IQ scores and document that poor attendance, instead of inability, caused her poor performance in school. (*Id.* at 17).

Absent good cause, an ALJ must give "substantial or considerable weight" to the medical opinions of "treating physicians." *Winschel*, 631 F.3d at 1179; *see* 20 C.F.R. § 416.927(c)(2). But Ms. Smith was not a treating physician; she conducted a one-time consultative examination. *Cf.* 20 C.F.R. § 416.927(a)(2). Even when addressing a non-treating source's medical opinion, an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "[T]he ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Sryock v.*

*Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added); *cf.* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Here, the ALJ articulated particular reasons for giving Dr. Smith's findings and opinion little weight. A review of the record confirms that the ALJ accurately described the medical evidence on which he relied to discount Dr. Smith's opinion. (*Compare* R. at 17 *with id.* at 152, 166, 168, 170, 191–94, 196–202, 213, 346, 366, 385, 440, 445, 508, 545–56). The court cannot "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178; *cf. Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [the appellant] points to other evidence which would undermine the ALJ's [residual functional capacity] determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (footnote, quotation marks, and alterations omitted).

Ms. Tisdale appears to argue that the ALJ was bound by Dr. Smith's report because she was qualified to perform the test she administered, the Social Security Administration requires the type of test that she administered, and no other standardized test "contradicts the standardized test results in the report of

Dr. Smith." (Doc. 10 at 25–30; Doc. 19 at 6–7). But as discussed above, "the ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Sryock*, 764 F.2d at 835 (emphasis added). Because the ALJ articulated specific (and accurate) reasons for giving Dr. Smith's report little weight, the court finds that substantial evidence supports his decision to give little weight to Dr. Smith's opinion.

    2.    Listing 12.05(B)

To qualify under Listing 12.05, an applicant must show that she has (1) significantly subaverage general intellectual functioning (2) with significant deficits in adaptive functioning (3) that began before age twenty-two. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05(B). To show significant deficits in adaptive functioning, the applicant must establish either an extreme limitation of one, or marked limitation of two, of the following areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. *Id.* § 12.05(B)(2). Listing 12.05(B) refers to Listing 12.00(E) for definitions of those areas. *See id.*

The ALJ found that Ms. Tisdale had moderate limitations in all four areas of adaptive functioning, but that she had no marked or extreme limitations in any of those areas, disqualifying her from establishing eligibility under Listing 12.05. (R. at 14). Ms. Tisdale contends that she had extreme or marked limitations in all

9

four areas, arguing that (1) the ALJ should not have relied on reports from her mother and stepfather about her capabilities; (2) testing done while she was in school showed her inability to understand, remember, and apply information well; (3) the Social Security examiner who noted that she could answer questions during the teleclaim interview asked only very simple questions, so the ALJ should not have looked at her ability to answer those questions; (4) treating physicians who found her mental status normal were not psychiatric or psychological "personnel" and had not conducted any standardized testing; and (5) Dr. Smith's report gave Ms. Tisdale "Extremely Low" scores. (Doc. 10 at 12–18).

As discussed above, substantial evidence supports the ALJ's decision to give little weight to Dr. Smith's report. That same evidence supports the ALJ's decision to find that Ms. Tisdale had moderate, but not marked or extreme limitations, in all four areas. At the hearing, Ms. Tisdale was able to answer the ALJ's questions about where she lived, her marital status, her age and weight, her medical history, the age of her children, her birthday, her education, and her past work history. (R. at 30–39). She testified that "most of the time" she could remember instructions; she could read, write, do simple math, and make change; she took care of her children with the assistance of her own mother; and when she was feeling depressed, she would read a book or play with her children. (*Id.* at 38, 40–41).

In addition to Ms. Tisdale's own testimony about her capabilities, her stepfather and mother reported that she could take care of her children, follow instructions well, prepare simple meals on a daily basis, make the bed, wash dishes, clean up around the house, shop for food and clothes once or twice a month, pay bills, count change, handle a savings account, use a checkbook, watch TV and read, interact with others on the phone and on the computer, attend church, get along with authority figures, and handle changes in her routine. (R. at 188–202). And although Ms. Tisdale challenges the conclusions the ALJ drew from the medical evidence (or lack of medical evidence), this court may not reweigh evidence or substitute its judgment for that of the ALJ. *See Winschel*, 631 F.3d at 1178; *Moore*, 405 F.3d at 1213. Accordingly, the court finds that substantial evidence supports the ALJ's determination that Ms. Tisdale does not meet or medically equal the severity of Listing 12.05(B).

### 3. Sheltered Work Activity

The ALJ found that Ms. Tisdale had the residual functional capacity to perform light work with certain additional restrictions. (R. at 16). Ms. Tisdale contends that substantial evidence does not support that determination because Dr. Smith's report establishes that she has only the residual functional capacity to perform sheltered work. (Doc. 10 at 25–30). But as set out above, substantial evidence supports the ALJ's decision to afford little weight to Dr. Smith's report.

Accordingly, substantial evidence also supports the ALJ's determination that Ms. Tisdale was capable of more than sheltered work.

4. <u>Existence of Jobs in the National Economy that Ms. Tisdale Can Perform</u>

The vocational expert testified by interrogatory that there are a significant number of jobs in the national economy that Ms. Tisdale can perform based on her residual functional capacity. (R. at 251–52). Based on the descriptions of jobs given in the Department of Labor's Dictionary of Occupational Titles, the vocational expert identified three jobs: (1) assembler; (2) product marker; and (3) packager. (*Id.* at 252).

Ms. Tisdale elicited from the vocational expert testimony that the Dictionary of Occupational Titles was last updated in the 1990s and that the Department of Labor now provides job descriptions in the "O*Net." (R. at 299). According to Ms. Tisdale, the O*Net's closest analogues for the three jobs (assembler, product marker, and packager) identified in the Dictionary of Occupational Titles each require a high school diploma, which she lacks. (*Id.* at 300–01). But the vocational expert testified that she does not use O*Net data because the Social Security Administration does not accept it, as "O*Net occupational clusters do not include adequate functional performance data and [are] best suited for vocational exploration and career development. It is inadequate for use in this venue." (*Id.*).

The ALJ acknowledged that Ms. Tisdale had "questioned the vocational expert's methodology for determining" the existence of jobs that she could perform. (R. at 19). He stated that he had "considered [her] line of questioning," but that the vocational expert's job information was reliable because "the vocational expert has professional knowledge and experience in job placement. Moreover, the vocational expert explained that her methodology is based on sources of information administratively noticed under the Regulations." (*Id.*).

Ms. Tisdale contends that substantial evidence does not support the ALJ's conclusion that there are jobs in the national economy that she can perform because (1) he failed to reconcile contradictions between the vocational expert's testimony, the Dictionary of Occupational Titles, and the O*Net; and (2) his hypothetical question to the vocational expert did not incorporate all of her limitations. (Doc. 10 at 18–25, 30–33). The court will address each argument in turn.

First, Ms. Tisdale's argument about the ALJ's alleged failure to reconcile contradictions between the vocational expert's testimony, the Dictionary of Occupational Titles, and the O*Net fails. Ms. Tisdale relies entirely on the Eleventh Circuit's decision in *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018). But that case involved an entirely different scenario. In *Washington*, the vocational expert testified that the claimant could perform two

available jobs, and that his testimony was consistent with the Dictionary of Occupational Titles. *Id.* at 1357. But in fact, the Dictionary of Occupational Titles stated that both jobs required a worker to do "frequent fingering," which the ALJ had found the claimant was not capable of doing. *Id.* at 1357–58. The Eleventh Circuit held that "the ALJ has an affirmative obligation to identify any 'apparent' conflict [between the vocational expert's testimony and the Dictionary of Occupational Titles] and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Id.* at 1362.

In this case, Ms. Tisdale has not asserted that any conflict exists between the vocational expert's testimony and the Dictionary of Occupational Titles. Instead, she argues that the Social Security Administration should no longer rely on the Dictionary of Occupational Titles, and should instead look to the O*Net for information about the existence of jobs in the national economy because the O*Net is more up to date. (*See* Doc. 10 at 21–25). The *Washington* decision does not hold that an ALJ must disregard the information contained in the Dictionary of Occupational Titles because it is old or outdated. Accordingly, the *Washington* decision does not require this court to reverse the ALJ's decision.

But even if the *Washington* decision did apply in this situation, it would not require the court to reverse. Unlike in the *Washington* decision, the ALJ here acknowledged Ms. Tisdale's argument about the inconsistencies between the

Dictionary of Occupational Titles and the O*Net, but he expressly found the vocational expert's testimony based on the Dictionary of Occupational Titles reliable. (*See* R. at 19). Even if this court disagreed with the ALJ's factual determination, the court could not overturn that determination. *See Winschel*, 631 F.3d at 1178.

Ms. Tisdale's final argument is the vocational expert's testimony cannot provide substantial evidence supporting the ALJ's disability determination because the ALJ's hypothetical question to the vocational expert did not incorporate all of her limitations. (Doc. 10 at 30–33). A vocational expert's testimony that there are jobs a claimant can perform in the national economy may serve as substantial evidence of the existence of such jobs. *Wilson v. Barnhard*, 284 F.3d 1219, 1227 (11th Cir. 2002). But to serve as substantial evidence, the ALJ's hypothetical question to the vocational expert must include all of the claimant's impairments. *Id.*

As discussed above, substantial evidence supports the ALJ's decision to afford little weight to Dr. Smith's findings and opinion. And an ALJ is "not required to include findings in the hypothetical that the ALJ . . . properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. The ALJ's hypothetical question to the vocational expert incorporated the limitations that the ALJ found applied to Ms. Tisdale. (*Compare* R. at 15, *with id.* at 251–52). Accordingly, the vocational

15

expert's response that Ms. Tisdale could perform a significant number of jobs that exist in the national economy serves as substantial evidence supporting the ALJ's determination that she is not disabled.

## III. CONCLUSION

The court **WILL AFFIRM** the Commissioner's decision to deny Ms. Tisdale's application for supplemental security income benefits.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this April 29, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE